ORIGINAL

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| RICKY GARRETT, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-066-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.  STATEMENT OF THE CASE

Plaintiff Ricky Garrett ("Garrett") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claim for disability insurance benefits under Title

II of the Social Security Act ("SSA").  In November 2008, Garrett applied for disability

insurance benefits alleging that he had become disabled on February 17, 1994.  (Transcript

("Tr.") 10, 127-33.)  His applications were denied initially and on reconsideration.  (Tr. 10, 70-

78.)  The administrative law judge ("ALJ") held a hearing on October 22, 2009 and issued a

decision on June 17, 2010 that Garrett was not disabled.  (Tr. 7-20, 26-66.)  Garrett filed a

1

written request for review, and the Appeals Council denied Garrett's request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-6.)

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show

2

he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.  ISSUES

1. Whether the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence.

2. Whether substantial evidence supports the ALJ's finding that none of Garrett's severe impairments met any section in the Listing.

3. Whether the ALJ erred in failing to properly evaluate Garrett's obesity.

4. Whether the ALJ erred in not giving "great weight" to the VA's determination of total disability made by the Department of Veterans Affairs ("VA").

## IV.   ADMINISTRATIVE RECORD AND ALJ FINDINGS

In her June 17, 2010 decision, the ALJ found that Garrett met the disability insured status requirements of the SSA through December 31, 1999 and that he had not engaged in substantial gainful activity since February 17, 1994, his alleged onset date of disability. (Tr. 12.)  The ALJ further found that Garrett had the severe impairments of "hypertension, obesity, bilateral pes planus, coronary artery disease, mild cervical and lumbar disc disease[,] depression and diabetes."  (*Id.*)  Next, the ALJ held that none of Garrett's impairments or combination of impairments met or equaled the severity of any impairment in the Listing, including sections 1.02, 1.04, 1.06, 3.10, 4.04, 9.08 or 12.04. (Tr. 12-13.)  As to Garrett's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work . . . except was limited to simple, routine work. He was able to lift and carry objects weighing ten pounds.  The claimant was able to sit for at least six hours, and stand and walk combined for two hours, in an eight-work [sic] day. He could occasionally balance, stoop, kneel, crouch and crawl but was unable to climb ropes or ladders. He could maintain work at this level.

(Tr. 14 (emphasis omitted).)  The ALJ further opined, based on her RFC assessment, that Garrett was not able to perform any of his past relevant work but that he was able to perform jobs that existed in significant numbers in the national economy. (Tr. 18-19.)  Consequently, the ALJ found that Garrett was not disabled. (Tr. 19-20.)

## V.  DISCUSSION

A.  RFC Determination

The first issue is whether the ALJ's RFC determination is supported by substantial evidence.  In his brief, Garrett argues that the ALJ's RFC determination is not

4

supported by substantial evidence because the ALJ: (1) failed to consider or ignored the available relevant evidence pertaining to his spinal disorder, left foot impairment, diabetic neuropathy, coronary artery disease, and sleep apnea; and (2) misinterpreted the evidence that she did consider. (Pl.'s Br. at 16-25.) Furthermore, Garrett complains that the ALJ's RFC decision is flawed because the ALJ relied on a July 1996 VA examination that contained findings inconsistent with the limitations of a normal human body. (Pl.'s Br. at 17.)[1] In addition, Garrett argues that the ALJ erred by finding that Garrett could "maintain work" at the sedentary level but failed to discuss his "unsuccessful attempt at performing sedentary employment during 1994 and 1995" when he temporarily worked part-time as a linen clerk for the VA. (Pl.'s Br. at 21-22.) Garrett also complains that the ALJ's decision violates his due process and is flawed as a matter of law because it improperly refers to him as "Mr. Jacob" on all occasions except one. (Pl.'s Br. at 25-26; Pl.'s Reply at 8; see Tr. 18-26.)

RFC is what an individual can still do despite his limitations.[2]  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a

---

[1] As to this argument, Garrett states:

> The ALJ also cites a compensation exam performed in July of 1996 by the VA stating that this exam confirms the RFC assessment in the decision. The decision notes that Garrett was able to flex his lumbar spine to 98 degrees, his straight leg raise was good, and that he had no neurological abnormalities.  However, this exam contains some interesting inconsistencies and additional evidence not mentioned in the decision.  Initially, it must be noted that full lumbar flexion is limited to 60 degrees in humans, shedding doubt on Garrett's or any person's ability to flex 98 degrees.  This does not appear to be the only error in the exam as Garrett's lumbar lateral extension and flexion were found to be 30-35 degrees when full lateral extension and flexion are limited to 25 degrees in humans.  Additionally, Garrett's straight leg raises were found to be normal, which is inconsistent with the documented ruptured disc at L4-L5 found in the MRIs from both 1994 and 2007.

(Pl.'s Br. at 17 (internal citations and footnotes omitted).)

5

regular and continuing basis. *Id. See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. *Id.* RFC is not the least an individual can do, but the most. SSR 96-8p at *2. The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered and is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence. *Id.* at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

---

[2] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from Step Three to Step Four. *Id.*

In addition, the regulations, rulings, and relevant case law reflect that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions he has made. *See generally* 20 C.F.R. § 404.1527(b), (d); *see also* SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. § 404.1527(b), (e)(1). The ALJ is entitled to consider treatment history or any other relevant factor that tends to support or contradict a medical source opinion. *See* 20 C.F.R. § 404.1527(d).

Violation of a regulation constitutes error and establishes a basis for reversal of the agency action and remand unless a reviewing court finds that the error is harmless. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Id.* at 622. Remand would be necessary only if the claimant's substantial rights have been affected. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) ("To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result.") (internal quotation marks omitted)); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, the ALJ determined that Garrett had the following RFC:

> [T]he claimant had the residual functional capacity to perform sedentary work[3] . . . except was limited to simple, routine work. He was able to lift and carry objects weighing ten pounds. The claimant was able to sit for at least six hours, and stand and walk combined for two hours, in an eight-work [sic] day. He could occasionally balance, stoop, kneel, crouch and crawl but was unable to climb ropes or ladders. He could maintain work at this level.

(Tr. 14 (footnote inserted).)  In support of her RFC assessment, the ALJ considered, *inter alia*, the following: (1) MRIs, CTs, and films of the cervical and lumbar spine that "revealed only mild spondylosis, mild disc disease and mild narrowing" (Tr. 15; *see, e.g.*, Tr. 342, 344-47, 1237-38, 1241, 1251-55); (2) "claimant had normal chest films, stress tests, an EMGN/CV, esophagram, CT of the brain, a negative eye examination, right lower Doppler study, bilateral Doppler studies, and a normal left ankle but for pes planus . . . [a]nd a cardiac catherization revealed normal arties and left ventricular functioning" (Tr. 15; *see, e.g.*, Tr. 349, 356, 360, 479, 535-37, 543-44, 1250; (3) a July 1996 VA compensation examination in which William Pickvance, M.D. ("Pickvance"), opined: (a) Garret was able to flex his lumbar spine 90 degrees[4] with little problem; (b) Garrett "came upright easily and smoothly;" and (c) Garrett's "[s]traight

---

[3] Sedentary work is defined as follows:

> [I]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  To perform the full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday.  20 C.F.R. § 404.1567(a); SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983).

[4] Garrett claims that Pickvance found he could flex his lumbar spine **98** degrees.  (Pl.'s Br. at 17.) However, a review of the examination indicates Pickvance actually opined that Garrett could flex his lumbar spine **90** degrees.  (*See* Tr. 1228.)

leg raising was said to be good and movement of the hips was normal" (Tr. 15; *see* Tr. 1226-1229); (4) a letter dated December 1996 in which Joseph Lonzetta, Jr., D.O., opined: (a) that "he had followed the claimant for coronary artery disease intermittently for several years and that he had recently undergone an exercise treadmill test which showed normal graded exercise treadmill testing;" and (b) Garrett also had "diabetes and hypertension, but that he was doing well despite his medical problems" (Tr. 15; *see* Tr. 1133); (5) evidence that Garrett "exhibited normal blood pressure readings from what was described as essential hypertension"[5] and that Garrett had "not developed any end-organ damage to include cardiac disease, retinopathy or kidney disease from his hypertension or diabetes" during the relative time period (Tr. 16; *see* Tr. 349, 387, 394, 1120); (6) examinations in which Garrett's "diabetes was without complications and his hypertension continued to be described as essential" (Tr. 16; *see* Tr. 401-405); (7) treatment notes indicating that Garrett's alleged severe disabling pain was significantly improved with intermittent treatment, pain medication, and orthotics (Tr. 16; *see* Tr. 388, 1136, 1138, 1151-52); (8) treatment notes in which Garrett "exhibited full muscles [sic] strength, normal bulk and tone, and no evidence of muscle wasting or atrophy" and had full range of motion in all extremities (Tr. 16; *see* Tr. 348-50, 359); (9) findings that Garrett was capable of meeting the demands "of medium work following [a] functional capacity evaluation" (Tr. 16, 1147 ); and (10) the fact that Garrett stated he performed most of the household chores, purchased and rode a motorcycle, and, as late as 2008, was cutting firewood (Tr. 17, 52-53, 58-59, 458-59).

---

[5] Essential hypertension is "hypertension occurring without discoverable organic cause." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 909 (31st ed. 2007).

The focus of Garrett's argument is that the ALJ's RFC determination is not supported by substantial evidence because the ALJ misinterpreted the evidence, ignored certain evidence, or relied on inconsistent evidence. Although the ALJ's written findings are not perfect,[6] the ALJ ultimately determined, based on substantial medical evidence and other evidence in the record, that Garrett had the capacity to perform sedentary work with some additional limitations. As noted above, procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected. *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir.2007) (stating that ALJ's omission does not require remand unless it affected claimant's substantial rights). Although the ALJ did not discuss every medical finding and opinion in the record, there is no evidence that, even if the ALJ had discussed every such finding and opinion, the result would be altered. The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue,* 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue,* 524 F.3d 872, 874 (8th Cir. 2008)).

In addition, the ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. In this case, it is clear that the ALJ was aware of and

---

[6] For instance, Garrett complains that the ALJ erroneously cited to a statement by Ronald Johnson, D.O. ("Johnson"), Garrett's treating physician, in support of the ALJ's finding that Garrett's spinal impairment was "mild." (*See* Tr. at 15 ¶ 2, 391.) Although this citation does not necessarily appear to support the ALJ's characterization of Garrett's spine impairment as "mild", there is other evidence, both cited to by the ALJ in other parts of her decision and in the record, that does support the ALJ's findings regarding Garrett's spinal impairment. (*See, e.g.,* Tr. 342, 344-47, 1184-85, 1226-29, 1237-38, 1241, 1250-53.) Consequently, any error by the ALJ in this regard was harmless.

In addition, as to Garret's argument that Pickvance's findings in the July 1996 VA compensation examination are inaccurate, the Court notes that its function is not to resolve factual conflicts in or between doctor's opinions. *See Carry v. Heckler,* 750 F.2d 479, 484 (5th Cir. 1988).

discussed Garrett's spinal impairment, left foot impairment, diabetic condition and heart impairment and properly incorporated limitations into Garrett's RFC that the ALJ found supported by the evidence. (*See, e.g.*, Tr. 12-18.) Furthermore, as to Garrett's sleep apnea, Garrett has pointed to no evidence that his sleep apnea affected his ability to perform sustained work activity on a regular and continuing basis during the relevant time period. (*See* Tr. 1046, 1186.)

As to the evidence referred to by Garrett that is dated after December 31, 1999, Garrett's date of last insured status, such evidence is generally not relevant to the ALJ's decision as it only shows possible deterioration in Garret's condition after the expiration of his insured status. *See* 20 C.F.R. § 404.131(a); *Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995); *Leon-Martinez v. Astrue*, No. SA-08-CA-448-XR, 2009 WL 1833592, at *5 (W.D. Tex. June 25, 2009) ("Evidence showing a degeneration of a claimant's condition after the expiration of insured status is not relevant to the disability analysis."). Furthermore, even though the ALJ incorrectly referred to Garrett as "Mr. Jacobs" throughout her written findings, it is clear from the ALJ's decision that such an error was an inadvertent typographical error and has no significance to the disability determination as all the evidence discussed by the ALJ related to Garrett and not to some other claimant.

Finally, as to Garrett's claim that the ALJ erred in finding that Garrett could "maintain work" at the sedentary level, Garrett argues that such finding is not supported by substantial evidence because the ALJ failed to discuss Garrett's "unsuccessful attempt at performing

sedentary employment during 1994 and 1995."[7]  (Pl.'s Br. at 21.)  Under Fifth Circuit law, a

"claimant capable of performing sedentary or light work under the guidelines must have the

ability to perform the required physical acts day in and day out in the sometimes competitive and

stressful conditions in which all people work in the real world."  *Wingo v. Bowen*, 852 F.2d 827,

831 (5th Cir. 1988) (quoting *Allred v. Heckler*, 729 F.2d 529, 533 (8th Cir. 1984)).

In this case, as noted above, the ALJ specifically found that Garrett was able to perform

simple, routine sedentary work, and was able to, *inter alia*, sit for at least six hours and walk and

stand, combined, for two hours in an eight-hour work day. (Tr. 14.)  The ALJ further found that

Garrett "could maintain work at this level." (*Id.*)  In making this determination, the ALJ relied,

*inter alia,* on the evidence discussed *supra* in section V.A., as well as on the following evidence:

(1) in October 1999 Garrett reported that he walked a mile daily (Tr. 15; *see, e.g.,* Tr. 1184); (2)

Garrett performed most of the household chores and purchased and rode a motorcycle (Tr. 17;

*see, e.g.,* Tr. 52-53, 58-59); (3) Garrett's alleged severe disabling pain, through use of

intermittent treatment and with pain medication and orthotics, had resulted in significant

improvement (Tr. 16; *see, e.g.,* Tr. 388, 1136, 1138, 1151-52); and (4) in 1997, after he allegedly

became disabled, Garrett briefly worked more than four hours a day as a substitute teacher

several times a week. (Tr. 12-13, 17; *see, e.g.,* Tr. 34).

In this case, as asserted by Garrett, the ALJ did not specifically discuss the fact that

Garrett temporarily worked part-time in the linen service at the VA from 1994-1995 when he

---

[7] In early 1994, Garrett "was found physically unfit for [his] file clerk job at the VA." (Pl.'s Br. at 7.) Thus, the VA created a temporary "sedentary, 'light duty' part time job at the linen service . . . as an accommodation" to "allow Garrett's medical insurance benefits to continue until he would be able to qualify for retirement benefits." (*Id.*) "When Garrett became vested, he was terminated from his made up linen service position and allowed to collect a civil service disability retirement." (*Id.* at 7-8.)

could not perform his regular duties as a file clerk. However, any alleged failure by the ALJ to specifically discuss this temporary job is harmless because, as set forth *supra*, substantial evidence supports the ALJ's decision regarding Garrett's ability to perform sedentary work activities with limitations on a regular and continuing basis.

In sum, the evidence discussed above provides substantial support for the ALJ's RFC determination that Garrett was capable of performing sedentary work with additional limitations. The ALJ discussed the evidence in the record in making her RFC determination, adequately explained the reasoning for her RFC determination, and exercised her responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into her RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's RFC assessment, the Court concludes that the ALJ's decision should be affirmed in this regard.

B. Listed Impairments

The next issue is whether substantial evidence supports the ALJ's finding that none of Garrett's severe impairments met any section of the Listing. Garrett claims that the ALJ erred because she only discussed the evidence and criteria for Listing 12.04 but "fail[ed] to discuss any evidence . . . in finding Garrett's impairments did not meet the criteria of the other 6 Listings allegedly considered or provide an explanation of why the 6 Listings were not met." (Pl.'s Br. at 26.) Specifically, Garrett argues that he met the criteria of Listing 1.04 because he had "documented diagnoses of degenerative disk disease and herniated nucleus pulpous, which were never acknowledged or considered by the ALJ in the decision" and had evidence that "the ruptured disk had resulted in compression of the exiting L5 nerve root, causing radiating pain,

13

limited lumbar range of motion, sensory loss, reflex loss, and a positive straight leg raise." (Pl.'s Br. at 27-28.)

The claimant has the burden of proving that his impairment or combination of impairments meets a listing at Step Three. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the claimant fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619-20.

As a threshold matter, the ALJ is responsible for ultimately deciding the legal question of whether a listing is met. SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996).

In this case, the ALJ, in making her decision at Step Three, stated that "the claimant does not have an impairment, or combination of impairments, that meets or equals the criteria of Listings 1.02, 1.04, 1.06, 3.10, 4.04, 9.08 or 12.04 of Appendix 1." (Tr. 13.) As to section 12.04, the ALJ then went through detailed findings explaining why Garrett's mental impairments did not meet such section of the Listing. (Tr. 13-14.) The ALJ, however, did not identify the

14

specific evidence on which she relied for the conclusion at Step Three that Garrett's impairments did not satisfy any other section in the Listing.

"Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N. D. Tex. May 13, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).  However, even assuming the ALJ erred at Step Three by failing to provide reasons for her adverse findings, remand would be necessary only if the claimant's substantial rights have been affected. *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected.").  Although an ALJ has a duty to analyze Plaintiff's impairments under every applicable Listing, an ALJ's failure to consider a specific listing is harmless if the record shows such Listing is not met. *See Audler v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007).  To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, except as to section 1.04, Garrett has not argued or provided any evidence that he met any of the other sections of the Listing.  Consequently, the Court finds that Garrett has wholly failed to attempt to demonstrate the specified medical criteria of any of the sections in the Listing (except section 1.04) and substantial evidence supports the ALJ's decision at Step Three as to all of these sections.  To meet section 1.04 of the Listing, which deals with disorders of the spine or the spinal cord, Garrett must show, as relevant here, the following:

15

Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04.

In making her determination that Garrett was not disabled, the ALJ relied, *inter alia*, on a July 1996 VA compensation examination in which Pickvance opined that Garrett's "[s]traight leg raising was said to be good and movement of the hips was normal" and there was no wasting of the quadriceps (Tr. 1228). In this case, Garrett has pointed to evidence in the record allegedly showing that all the requirements of section 1.04 have been met.[8] (Pl.'s Br. at 26-28; Pl.'s Reply Br. at 8-9.) However, there is also contrary evidence, as discussed by the ALJ in her opinion, indicating that Garrett did not suffer from some of the requirements of section 1.04, including that he did not have a positive straight-leg raising test in July 1996. In light of this evidence, the Court may not substitute its judgment for that of the ALJ. Because substantial evidence supports the ALJ's decision at Step Three that Garrett did not meet <u>all</u> the requirements of section 1.04 of the Listing, the Court concludes that remand is not required.

C. <u>Obesity</u>

Garrett also argues that the ALJ violated SSR 02-1p "by making no attempt to assess the effect of Garrett's obesity on his exertional functioning, postural functioning, social functions, ability to perform necessary physical activity, or to assess the effect of his obesity on his severe spinal or left foot functioning." (Pl.'s Br. at 27-28.) As to obesity, the Social Security rulings

---

[8] Although Garrett did not specifically point to evidence that he suffered from motor loss in the relevant section of his brief, there is evidence in the record indicating that he had suffered from motor loss or atrophy with associated muscle weakness or muscle weakness. *See, e.g.*, Tr. 1091 ("<u>MUSCLE STRENGTH</u>: Left ankle is 3/5 to 4-/5. Otherwise lower extremity strength is 4/5.").

16

recognize that obesity, though not a listed impairment, can reduce an individual's occupational

base for work activity in combination with other ailments. *See* 20 C.F.R., Pt. 404, Subpt. P, App.

1, § 1.00(Q) (2011); SSR 02-1p, 2000 WL 628049, at *5-7 (S.S.A. Sept. 12, 2002). A claimant's

obesity must be considered at all steps of the sequential evaluation process. SSR 02-1p at *3.

The ALJ must perform an "individualized assessment of the impact of obesity on an individual's

functioning when deciding whether the impairment is severe." *Id.* at *4.

In this case, the ALJ determined that Garrett's obesity was one of several severe

impairments. (Tr. 12.) The ALJ then found that Garrett had the RFC to perform simple, routine

sedentary work, was able to lift and carry objects weighing ten pounds, was able to sit for at least

six hours, and could stand and walk for two hours in an eight-hour workday. (Tr. 14.) The ALJ,

in making such a determination, noted the following: (1) Garrett reported that he had weighed

385 pounds in 1999 but had since lost about 150 pounds (Tr. 14); (2) in a July 1996 VA

compensation examination, Garrett "was noted to weigh 278 and reported that his weight had

been up to 285 in the previous year" (Tr. 15); (3) in October 1999, Garrett weighed 280 pounds

and reported that he walked a mile daily (Tr. 15). The ALJ further stated:

> The claimant's obesity has been considered under the guidelines provided
> by Social Security Ruling 02-1p. The clinical record as a whole fails to establish
> that the claimant's obesity has resulted in any end-organ damage or organomegaly
> to include cardiac disease, liver or kidney disease. While he alleged at the hearing
> that he weighed 385 pounds during the relevant period, it is noted that he weighed
> only 270 pounds in 1993. In 1996 the claimant weighed 278 and reported that the
> most he had weighed in the previous year was 285. In 1999, he weighed 280.
> Thus it appears that in his testimony, the claimant exaggerated the extent of his
> obesity during the relevant period. This does not speak well of the credibility of
> the claimant's testimony in general, either because he was intentionally
> exaggerating his limitations during [the] relevant period or because he simply
> forgot what limitations he had had ten years before the hearing. While the
> claimant was obese during the relevant period, the evidence indicates that he

weighed less than 300 pounds. There is no evidence that the claimant's obesity
was so severe as to prevent him from performing sedentary work activity.

(Tr. 16 (internal citations omitted).)

In this case, contrary to Garrett's assertions, the ALJ did specifically consider Garrett's

obesity and the effects his obesity had on his ability to function in the work place. Furthermore,

Garrett has failed to identify any evidence, beyond mere speculation, that indicates his obesity

limited his ability to perform basic work activities and there is no objective evidence that any

decreased functioning was attributable to his obesity during the relevant time period. *See, e.g.,*

*Crossley v. Astrue,* No. 3:07-CV-0834-M, 2008 WL 5136961, at *5 (N.D. Tex. Dec. 5, 2008)

("Obesity is not a per se disabling impairment and Plaintiff has offered no medical evidence that

her obesity actually results in these limitations or any further limitations beyond the sedentary

work level found by the ALJ.") Because the ALJ properly considered the issue of obesity in

accordance with SSR 02-1p and substantial evidence supports the ALJ's RFC assessment as

unaffected by the issue of obesity, the Court concludes that remand is not required.

    D.  VA Determination

Garrett argues that the ALJ erred by failing to explain her reasoning for not giving "great

weight" to the VA's determination that Garrett was totally disabled. (Pl.'s Br. at 30-31; Pl.'s

Reply at 9-10.) "A VA rating of total and permanent disability is not legally binding on the

Commissioner because the criteria applied by the two agencies is different, but it is evidence that

is entitled to a certain amount of weight and must be considered by the ALJ." *Chambliss v.*

*Massanari,* 269 F.3d 520, 522 (5th Cir. 2001) (citing *Loza v. Apfel,* 219 F.3d 378, 394 (5th Cir.

18

2000)); *see* SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006);[9] *Latham v. Shalala*, 36

F.3d 482, 483 (5th Cir. 1994); *Rodriguez v. Schweiker*, 640  F.2d 682, 686 (5th Cir. 1981); *Epps*

*v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980).   Pursuant to Fifth Circuit precedent, a VA

disability determination is entitled to great weight unless the ALJ adequately explains the valid

reasons for not doing so.  *Chambliss*, 269 F.3d at 522.  "Where the ALJ disagrees with VA's

disability findings, there is no reversible error as long as the record reflects consideration of

those findings."  *Welch v. Barnhart*, 337 F. Supp. 2d 929, 935 (S.D. Tex. 2004) (citing *Kinash v.*

*Callahan*, 129 F.3d 736, 739 (5th Cir. 1997)); *see Vaught v. Astrue*, 271 F. App'x 452, 454-55

(5th Cir. 2008) ("ALJs need not give 'great weight' to a VA disability determination if they

adequately explain the valid reasons for not doing so.").

     On November 21, 1996, the VA issued a rating decision finding that "due to Garrett's left

foot disorder, dysthymic disorder, hypertension, pseudofolliculitis, and acne keloidosis he was

100 percent disabled."  (Pl.'s Br. at 10; *see* Tr. 1118-21.)  As to this VA disability determination,

the ALJ, in her decision, stated:

> In the present case it is noted that the findings of disability made by the
> claimant's prior employers are not afforded controlling weight pursuant to 20
> CFR 404.1527.  Their determinations may involve a different body of facts given
> the claimant's date last insured and certainly involved a different legal definition
> of disability and the regulations provided to evaluate of [sic] an individual's

---

[9] The relevant portion of SSR 06-03p states:

[W]e are required to evaluate all the evidence in the case record that may have a bearing on our
determination or decision of disability, including decisions by other governmental and
nongovernmental agencies (20 C.F.R. 404.1512(b)(5) and 416.912(b)(5)).  Therefore, evidence of
a disability decision by another governmental or nongovernmental agency cannot be ignored and
must be considered.

SSR 06-03p, 2006 WL 2329939, at *6.

disability.  And 20 CFR 404.1502[10] provides specifically that determinations by other governmental agencies as to a finding of disability that are based on their rules are not considered to be the Administration's decision.  Thus, while the undersigned notes that the claimant was found to be disabled for purposes of VA benefits and for purposes of Civil Service disability benefits, the undersigned finds that he is not disabled for purposes of Social Security disability for the reasons stated in this decision.

(Tr. 18 (footnote inserted).)

In this case, it is clear that the ALJ did consider the VA determination and chose to not give it controlling weight for the reasons the ALJ had already articulated earlier in her decision. The ALJ, as set forth above, gave specific reasons for and discussed the evidence in the record in ultimately determining that Garrett was not disabled.  The ALJ referred to such reasons in determining that the VA determination was not entitled to controlling weight.  Because the ALJ complied with her duty in considering the VA determination and explaining valid reasons for not giving it great weight, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the

---

[10] The Court assumes that the reference to 20 C.F.R. § 404.1502 was a typographical error and the ALJ actually meant to refer to 20 CFR § 404.1504, which states, *inter alia*, "A decision by any . . . governmental agency about whether you are disabled . . . is based on its rules and is not our decision about whether you are disabled."  20 C.F.R. § 404.1504.

party has been served with a copy of this document.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until November 1, 2011 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October 18, 2011.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

21